329 P.2d 407

**Pearl GREGORY, Plaintiff and Appellant,**

**v.**

**DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Defendant and Respondent.**

No. 8695.

Supreme Court of Utah.

Sept. 10, 1958.

Ray S. McCarty, Lee Neff Taylor, Salt Lake City, for appellant.

Van Cott, Bagley, Cornwall & McCarthy, Clifford L. Ashton, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Plaintiff, Mrs. Pearl Gregory, appeals from a directed verdict rendered against her in the district court.

This action was commenced to recover damages for personal injuries sustained when one of the defendant's diesel locomotives pulling 27 cars struck the car in which plaintiff was riding. The accident occurred in Salt Lake City on December 26, 1955.

Plaintiff alleged defendant's acts of negligence to have been: excessive speed, failure to maintain proper lookout, failure to sound a warning bell or whistle, and the failure to provide a flagman to halt automobile traffic. At the close of plaintiff's case defendant moved for a directed verdict on the grounds that no evidence had been produced to indicate defendant was negligent, or that any act or omission of defendant was the proximate cause of plaintiff's injury, and further that the evidence revealed that the sole proximate cause of the accident was the negligence of plaintiff's husband, who drove the car, or her own contributory negligence. The motion was granted by the court.

On the morning of the accident plaintiff and her husband, who had died prior to the trial, were proceeding west along 4th North Street in Salt Lake City. The time was approximately 11:45 a. m., the day was clear and the road dry. As the car approached the railroad crossing Mr. Gregory stopped; then, seeing no watchmen, began to cross. In his deposition he stated he assumed the absence of a watchman, whose presence he had observed on previous occasions, indicated the way was clear and that he had the right of way. Mr. Gregory also testified he heard a diesel engine just as he started to cross, but dismissed it from his mind since he thought the way was clear. He thereupon traveled some 100 feet and crossed seven of the

eight tracks which traverse 4th North Street at that location. The impact occurred on the last track. Mr. Gregory characterized his speed as being about that of a fast walk. He was not sure whether there had been a bell or whistle sounded, but did not think there had. He did not see the train until it was but six to ten feet away.

The train came to rest 612 feet beyond the point of impact, the automobile was pushed for almost 98 feet along the track.

Mrs. Gregory, the plaintiff, was unable to testify concerning the accident as her injuries rendered it impossible for her to recall the occurrences of that day.

In appealing the directed verdict of the lower court plaintiff contends that the liability of defendant was established through four separate acts or omissions, each sufficient in itself to be considered by the jury. The sole question before this court is whether plaintiff did in fact make a case which should have been put to the jury.

It is elementary that in order to have his cause submitted for jury consideration, a plaintiff must present sufficient evidence to establish a prima facie case against the defendant.[1] Should plaintiff fail to do so the defendant is entitled to have the verdict directed in his favor.[2]

The following examination of the evidence introduced by plaintiff to support the alleged negligence of defendant, reveals, when viewed in the light most favorable to plaintiff, that she failed to carry such burden.

a) Excessive speed. The only evidence tending to support this allegation was the distance required for the train to come to a stop after impact and the distance the automobile was pushed along the track. The absence of some evidence to tie these figures to a speed estimate, and to indicate how soon actual braking began, leaves the figures dangling in space and would give the jury no basis upon which to determine whether 612 feet was indicative of excessive or lawful speed.

b) Failure to keep proper lookout. There was no evidence, save the fact that the accident did occur, to support this allegation.

c) Failure to sound whistle or bell. The sole evidence offered on this point was the testimony of Mr. Gregory that he didn't think there had been such warning, he said:

"A. I don't think there was, I am not going to be positive. I am not going to say something I don't know.

---

1. Rule 41(b), Utah Rules of Civil Procedure, Winegar v. Slim Olson, Inc., 122 Utah 487, 252 P.2d 205.

2. Boskovich v. Utah Const. Co., 123 Utah 387, 259 P.2d 885.

"Q. Would you say Mr. Gregory, that such a whistle was not blown? A. No sir I wouldn't. I wouldn't say it wasn't and I wouldn't say it was."

Plaintiff's only witness on this point was thus uncertain as to whether there had been a warning sounded.

■ (d) Absence of a flagman. It is conceded that where there is evidence that the particular crossing, either because of its permanent features or because of circumstances existing at the time in question, was more than ordinarily hazardous a jury question is presented as to whether or not the railroad in the exercise of reasonable care should have provided a flagman to warn of approaching trains. The record before us reveals no such evidence. The plaintiff's own witness testified that from a point where the driver of plaintiff's automobile entered the crossing the track upon which the collision occurred was visible from a distance of one quarter to one half mile to the north. There is no evidence as to the amount of traffic proceeding on the rails at the time and the driver of plaintiff's car testified that he saw no other automotive traffic on the highway. But the argument is advanced that where a railroad company customarily maintains a watchman at a particular crossing it is negligence for the railroad on a particular occasion, at least as to a person who knew of the custom, not to station a flagman. Assuming the correctness of that rule under circumstances calling for its application, we find no evidentiary basis for applying it in the instant case. The mere fact that the driver of the car testified that he had seen a flagman there "lots of times" is not sufficient to establish a custom to maintain a flagman there at all times, or at the time of day or under the circumstances revealed by the evidence before us. The custom was therefore not established. Absent a showing of facts which give rise to a duty plaintiff cannot recover for an alleged breach thereof.

■ From what has been said it is apparent that the plaintiff failed to prove a prima facie case of negligence on the part of the railroad company. The trial court was therefore correct in not submitting the matter for the jury's consideration. Its judgment is affirmed. Costs to respondent.

WORTHEN and HENRIOD, JJ., concur.

CROCKETT, Justice (concurring).

I concur in affirming the judgment but upon a different ground: that viewing the evidence even in the light most favorable to plaintiff, the negligence of Mr. Gregory was the sole proximate cause of the collision. I don't see how reasonable minds could find to the contrary. He approached this expanse of at least eight railroad

tracks at a very slow rate of speed, so that at any instant he could have stopped his car within a very few feet. There was no reason why he could not have seen the train which was coming from the north. Under the old and well-established rule, this impales him upon the horns of a dilemma: he either failed to look; or he looked and failed to heed.[1]

The train crew had the right to assume that Mr. Gregory would stop and would not proceed in front of the train, until the time something occurred to warn them to the contrary. Particularly in view of his very slow speed, this would not be until he got quite close to their track, at which time the train was practically upon him. It is contrary to the generally known laws of physics and common sense to expect the train, with its great weight and momentum, to stop within the short distance available after the instant it should have become apparent that Gregory was not going to stop. After that point was reached, there is nothing the crew could have done to avoid the collision. And this is true whether the train was travelling fast or slow and whether the crew saw him or not.

The reason for this concurrence is that I am not in accord with the view that the plaintiff failed to make a prima facie case as to negligence of the railroad on grounds (b) failure to keep a proper lookout, and (d) absence of a flagman, as set forth in the main opinion.

With respect to (b), the fact that one vehicle is driven into another on the highway should be sufficient to raise a jury question as to whether the operator was keeping a proper lookout, absent any other explanation. I do agree that under the facts shown, failure to keep a lookout could not have been a proximate cause of the collision.

In regard to (d), the fact is that the railroad had made its own determination as to the need, and had provided a flagman at the crossing. This is shown by Mr. Gregory's evidence that he had observed such flagman there "lots of times." This presumably was at any time he happened to cross. No effort was made to show otherwise. I deem that a sufficient showing from which reasonable minds could draw the inference that the flagman is both necessary and customary. This would establish a prima facie case for the plaintiff on that issue. To require her to go any further would cast an unreasonable burden upon her; whereas if there is any reason to justify not having the flagman there at the particular time, that could best, and should be shown by the railroad in whose hands the proof of facts anent rail and vehicular traffic and hazards at the cross-

1. Abdulkadir v. Western Pac. R. Co., 7 Utah 2d 53, 318 P.2d 339 and cases therein cited.

ing lies. It is not questioned that there is evidence that the watchman was not on duty. I agree with the rule that where a flagman is usually maintained, which fact is known to the traveler, in approaching the crossing he may take some assurance of safety from the fact that the flagman is not there.

I think that the plaintiff made a sufficient showing to go to the jury as to the negligence of the railroad on the two grounds just mentioned.

However, on the issue as to Mr. Gregory's negligence being the sole proximate cause of the collision: it is to be kept in mind that the assurance which he could have taken from the absence of a flagman is only that which could be taken by a reasonable and prudent person under the circumstances. He was not thereby bereft of his reason and senses and permitted to go headlong onto the railroad tracks without using due care to observe for and take heed of this train which was in plain sight and too close to stop and avoid striking him, whether the train crew saw him or not. He obviously failed to observe the barest modicum of care in that regard. Therefore his negligence must be deemed to be the sole proximate cause of the collision and the trial court properly directed the verdict against the plaintiff.

WADE, Justice (concurring).

I concur with the result because I think the failure of the driver of the automobile to look to see if a train was coming was the sole proximate cause of the accident. I agree with the rule that where a flagman is usually maintained, which fact is known to the driver of the crossing automobile, in approaching the crossing he may take some assurance of safety from the fact that the flagman is not there. I also agree with Mr. Justice Crockett that Mr. Gregory's testimony that he had observed the flagman "lots of times" is sufficient to make a prima facie showing that a flagman was customarily there.